T. M. KULP, Appellee, v. TRUSTEES OF IOWA COLLEGE, Grinnell, Appellant, PALO ALTO COUNTY, Defendant.

No. 42019.

DECEMBER 12, 1933.

Dwight G. McCarty, for appellant Trustees of Iowa College.

Edward D. Kelly, for appellee.

ANDERSON, J.—The facts material to the questions to be here determined are brief. Prior to January 21, 1932, T. M. Kulp, the plaintiff-appellee, was the owner of a farm in Palo Alto county, Iowa, and the appellant, Trustees of Iowa College, held a mortgage of $8,000 upon the premises. On October 6, 1931, the college commenced a foreclosure of its mortgage. On the 21st day of January, 1932, the college-appellant, the appellee, T. M. Kulp, and others, former title holders and makers of the mortgage of $8,000, joined in an agreement which provided that the plaintiff in the foreclosure action, Trustees of Iowa College, should have a decree of foreclosure of its mortgage, and the college agreed to order out special execution at once and to bid in said real estate at sheriff's sale for the full amount of the judgment and costs, and to dismiss its application for a receiver. The plaintiff-appellee, title holder, and the former title holders and makers of the mortgage, agreed to execute and deliver to the plaintiff in that suit, Trustees of Iowa College, quit-claim deeds to the property described in its mortgage. L. A. Andrew, receiver, who held leases upon the mortgaged premises, agreed for the consideration of $600, to assign said leases to the plaintiff in the foreclosure action, retaining, however, the portion of the rents for 1931, already collected by him. The agreement further provided that the plaintiff in the foreclosure action was to have ownership and possession of said premises under the quitclaim deeds, and the assignment of the leases as of the date of the agreement.

312

The assignment of leases was made as provided in said agreement. And the quitclaim deeds therein provided for were executed and delivered on the 21st day of January, 1932. On January 22, 1932, a decree was entered in the foreclosure case, a special execution was issued, and the property sold thereunder on the 27th day of February, 1932, to the Trustees of Iowa College for the full amount of the judgment, interest, and costs, and a certificate of sale was issued to the said purchaser. In November, 1931, the appellee, T. M. Kulp, who was then the title holder of the mortgaged premises, sold to the county of Palo Alto for road maintenance purposes, gravel to the amount of $237.20, which was taken from said mortgaged premises; and in December, 1931, prior to the decree in foreclosure and the deeding of the property to the foreclosure plaintiff, $75 worth of timber or wood was taken and removed from the mortgaged premises. On the 15th day of April, 1932, T. M. Kulp, the plaintiff-appellee herein, and who owned the title to the mortgaged real estate until the execution of the quitclaim deeds on January 21, 1932, commenced this action against Palo Alto county for the amount due on account of the gravel sold and delivered to it, and in said action made the Trustees of Iowa College defendant. The county paid the money due from it into the office of the clerk of the district court. And a part of the proceeds from the sale of the timber or wood amounting to $17 was also paid into the office of the clerk. The plaintiff admitting the receipt and retention by him of $58, for the wood or timber, so that we have involved in this controversy approximately $300.

The college answered the petition and claim of plaintiff-appellee, Kulp, denying that he was entitled to recover the proceeds of the sale of the wood and timber, and in a counterclaim asked judgment against the county for the amount of money held in the office of the clerk of court, and judgment against the plaintiff for any balance collected and retained by him, and asked for an accounting of the defendant for moneys received by him from the sale of timber, or wood, or for gravel sold by him other than that represented by the deposits in the office of the clerk of court. The appellant, Iowa College, claiming that it was entitled to this relief by reason of the fact that it had commenced foreclosure upon its mortgage prior to the sale and removal of the gravel and timber, and that the removal of the gravel and timber by the plaintiff was a material damage to the real estate and an impairment of its

security. The case was transferred to equity for trial and resulted in a finding, decree, and judgment that the appellee was entitled to receive the proceeds of the sale of the gravel and timber. And judgment was entered in favor of plaintiff for the proceeds held by the clerk of the district court. From such finding, decree, and judgment, this appeal is prosecuted.

The appellant contends that the court erred in its finding and judgment for the reason that the gravel and standing timber removed from the land during the pendency of foreclosure proceedings belonged to the mortgagee; and that the mortgagee could maintain an action therefor. It also contends that the agreement in the foreclosure action and the execution and delivery of the quitclaim deeds to it was merely a transfer of the equity of redemption, and not a bargain or sale that would prevent a recovery for intervening damages.

It is true, as claimed by appellant, a mortgagee has an equitable interest in the mortgaged premises, and he may maintain an action, under certain circumstances, against the mortgagor or third party to prevent waste or for damages to the land which impairs his security. The mortgagee may also have the same relief during the period of redemption, but the cases cited and relied upon by the appellant do not furnish support for his contention that the mortgagee, under circumstances here shown, is entitled to recover for gravel and timber removed from the mortgaged premises prior to the decree of foreclosure or the sale of property thereunder. Prior to foreclosure, the mortgagee may only sue for injury to his security. Mathews v. Silsby Bros., 198 Iowa 1392, 201 N. W. 94, 37 A. L. R. 1116.

Where the obligation owing to the mortgagee has been satisfied in full, either by his purchase of the property at execution sale for the full amount of his judgment, or by the acceptance of a conveyance from the mortgagor, then the mortgagee has no further claim to damages for impairment of his security which occurred before the satisfaction of his mortgage indebtedness.

In this case the pleadings of the appellant disclose that its claim is based upon an alleged impairment of its security, and this claim is carried out and argued in the brief and argument of the appellant in this court. The claim is for waste and impairment occurring prior to the execution sale, and prior to the passing of title to the appellant under the quitclaim deeds. In the case of

Mathews v. Silsby Bros., *supra*, which is cited by the appellant, this court clearly defines the rights of the mortgagee when his security has been impaired. In that case we said:

"Two rules, long established, exist in this country. In those jurisdictions in which the mortgagee is deemed to be the holder of the legal title, whether in possession of the real property or not, he may maintain an action against a third party for damages to the mortgaged premises. In other jurisdictions in which the mortgagee is considered as having a mere lien upon the property, as in this state, the mortgagor retaining possession, he [the mortgagee] cannot maintain an action for trespass *quare clausum fregit*, but may sue for injury to his security."

This, however, limits the damages that may be recoverable to the amount of the mortgage debt. Heath v. Haile, 45 S. C. 642, 24 S. E. 300; Taylor v. McConnell, 53 Mich. 587, 19 N. W. 196. Consequently it follows that any damages collected for the impairment of his security must be applied on the mortgage indebtedness, and, when the mortgage indebtedness is paid, the mortgagee is entitled to no more.

Our prior decisions have applied these rules to situations identical with those in the case at bar. In the case of Corbin v. Reed, 43 Iowa 459, which was a case in which a mortgage had been foreclosed, and the mortgaged premises purchased at execution sale by the mortgagee for the full amount of his judgment, the petition claimed that, prior to the date of execution sale, the defendant, title holder, had committed waste. The trial court sustained a demurrer to the petition, and, upon appeal, this court, speaking through Justice Day, said:

"We are satisfied that this action of the court was right. The plaintiff bid in the property at the sheriff's sale, for the amount of the debt, interest and costs. He took the property in its then condition for the amount of his claim. Having satisfied his claim by bidding in property he has no right to recover more."

The above pronouncement was again affirmed in the case of Todd, etc., v. Johnson, 51 Iowa 192, 1 N. W. 498. In that case the mortgagees had foreclosed their mortgage and purchased the property at execution sale for the full amount of their judgment. They then claimed that they had been compelled to pay a prior lien and

that the covenant of warranty contained in the mortgage was thereby broken, and they prayed for a judgment for the amount of the lien which they had paid. In holding against the claim thus made by the plaintiff, this court said:

"They purchased the mortgaged property at the foreclosure sale for the amount of the debt, interest and costs, as we understand the record before us. They now seek to recover on the covenants of warranty contained in the mortgage. We are clearly of the opinion that the action cannot be maintained. The plaintiffs have had judgment against the defendants for every dollar that was secured by the mortgage. The judgment has been satisfied in full by a sale of the mortgaged property. Unless the sale and satisfaction shall be set aside, they have no claim whatever against the defendants. The debt which the mortgage secured has been paid, and no right of action upon the mortgage remains."

In the case of Union Central Life Insurance Company v. Bracewell, 209 Iowa 802, 229 N. W. 185, the mortgagee, after foreclosure, purchased the land at execution sale for the full amount of the judgment. It sought in a separate action to recover the proceeds of insurance realized from the destruction of some of the improvements by fire. These proceeds were held by the title holder under an agreement to use them for the reconstruction of the improvements. This court denied the claim of the mortgagee to these funds, and, speaking through Mr. Justice Kindig, we said:

"Therefore the contract's basis was security, and through the agreement a means was devised by which realization could be had upon the full protection originally furnished. Armed with that security, appellee was privileged to apply the same upon its debt. If, on the other hand, it chose to appropriate the land only, such was its right. But whatever security remained after the debt was satisfied out of the land reverted to the mortgagor or landowner free from further incumbrance. * * * After judgment was obtained for the entire debt, together with interest and costs at the foreclosure proceeding, the appellee, at the execution sale thereunder, bid the full amount of its claim for the land. * * * Appellee theoretically paid to the sheriff the amount of the bid, and that officer delivered the proceeds thereof back to it in satisfaction of the existing indebtedness."

To the same effect was the holding in Leach v. Savings Bank, 200 Iowa 954, 205 N. W. 790, and many other cases cited by Justice Kindig in the foregoing opinion.

In the case at bar the appellant took title and the right to possession of the mortgaged premises on January 21, 1932, through quitclaim deeds from the title holders. This merged and canceled the mortgage indebtedness as far as the title holders were concerned. The appellant then took its judgment in foreclosure for the full amount claimed by it on account of its mortgage, and, at execution sale thereunder, bid the full amount of such judgment, together with interest and costs. Its debt was then paid in full. The claimed waste and impairment of its security occurring prior thereto was then of no avail to the appellant. Manifestly there was no impairment of the mortgage security prior to the execution sale, as the mortgaged property was purchased at such sale for the full amount of plaintiff's indebtedness. There is nothing in this record to show that the appellant did not in fact receive, through the quitclaim deeds and at the execution sale, property worth the entire amount of the mortgage indebtedness. The payment of the mortgage indebtedness was all that the appellant was entitled to receive. It received this in full by reason of the facts we have detailed.

It is true, as claimed by appellant, and the authorities cited by it so hold, that the mortgage holder may maintain an action for the impairment of his security, so long as there is something owing to him upon the mortgage obligation, however, once such obligation has been satisfied, then the authorities cited by the appellant are not in point, and do not sustain appellant's present contention. There is no claim made by appellant that the waste and impairment occurred after it obtained title and during the period of redemption. Neither is there any claim of appellant that the security which it obtained in satisfaction of its mortgage was not equal in value to the entire mortgage indebtedness.

The case of LeValley v. Buckles, 206 Iowa 550, 221 N. W. 202, cited by the appellant, furnishes no support for the appellant's position here. In that case the gravel was sold and removed from the premises during the year of redemption, and we held because of that fact, that Code, section 11747, applied. Manifestly that section does not apply to the instant case, where the gravel was removed by the title holder while the appellant held its mortgage lien only. In that case the gravel was a part of the farm when the mort-

gagee made his purchase, and Code, section 11747, protects him in his right to recover damages for an injury to the property committed after the sale and before possession is delivered under the conveyance. We have no such situation in the present case.

Some question is made in the briefs as to the proper measure of damages for injury to real estate, but as our holding is that appellant has no right to recover in the instant case, it is unnecessary for us to discuss or determine the true measure of damages.

It follows from the foregoing discussion, and it is our conclusion, that the learned district court was right in its findings and judgment, and affirmance follows.—Affirmed.

ALBERT, C. J., and STEVENS, KINDIG, MITCHELL, and KINTZINGER, JJ., concur.